IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. 3:15-CR-00080-J0-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| CHAD STEPHEN WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.

In 2015, Officers Bryson and Kerridge of the Portland Police Bureau, stopped a gray Lexus in Northeast Portland, believing that the driver of the car failed to signal a lane change in violation of Oregon law. The defendant, Chad Stephen Wilson, was riding in the back seat of the Lexus at the time of the stop. The driver consented to a search of the vehicle and Officer Bryson discovered a closed red drawstring Nike bag on the floor of the back seat near where Wilson had been sitting. Inside the bag, which belonged to Wilson, Officer Bryson discovered a hand gun. Wilson was placed under arrest and later confessed to owning the gun.

Wilson now moves to suppress all evidence obtained as a result of the traffic stop, on two grounds. First, he argues that the police had no basis to initiate the investigatory traffic stop because the driver of the car properly signaled a lane change. Second, he contends that the warrantless search of the Nike bag was unconstitutional and cannot be justified by any exception to the warrant requirement. I find the officers justified in initiating the traffic stop and searching

-1- OPINION AND ORDER

the Nike bag based on the officers' reasonable suspicion that the occupants of the car were armed. Therefore, I DENY the motion to suppress [30].

## BACKGROUND

### I.    The Traffic Stop

On the evening of January 26, 2015, Officers Bryson and Kerridge were patrolling NE Sandy Boulevard in Gresham, Oregon.   As they proceeded westbound on NE Sandy Blvd., Officer Bryson ran license plate numbers of the passing cars, checking for outstanding warrants or registrations tagged as stolen vehicles. (#45, Att. 2 at 27)  The officers noticed a gray Lexus traveling eastbound and made a U-turn to travel eastbound on behind it.  As the patrol car completed the U-turn, the officers observed the Lexus signal a lane change for approximately 20 feet before abruptly changing lanes from the inner eastbound lane to the outer eastbound lane, and then immediately into the parking lot of Maddy's, a video poker establishment. (#37 Ex. A at 3)  The officers followed the Lexus into the parking lot, where it had pulled into a stall, stopped behind it and initiated a traffic stop. (#45 Att. 2 at 6)

Officer Bryson approached the driver's side of the car while Officer Kerridge went to the passenger side. (#45 Att. 2 at 7)  Officer Bryson requested the occupants' identifications.  The driver, Richard Hauck provided a Wisconsin driver's license and threw the car keys on to the dashboard of the car. (#45 Att. 1 at 10)  Keith Smith, who sat in the front passenger seat, searched for his wallet. Officer Kerridge observed Smith toss a pocket knife onto the floor of the vehicle. Officer Kerridge told Smith to leave his hands in his lap and not to reach for the knife. Smith verbally provided Officer Kerridge with his name and driver's license number, which she passed along to Officer Bryson. (#45 Att. 1 at 11)  Defendant Chad Wilson gave Officer Bryson his name, birthdate and last four digits of his social security number. (#37 Ex. A at 3)

Officer Bryson ran the occupants' information in LEDS/NCIC stayed at the Lexus and learned that Hauck had an outstanding Multnomah County felony warrant for delivery of methamphetamine and that Wilson was on post-prison supervision for felony convictions of Burglary I, Theft I, and Menacing. (#45 Att. 2 at 8-9)  Officer Bryson also found that both Smith and Wilson had prior weapons convictions. (#45 Att. 1 at 13)  After Officer Bryson discovered the outstanding warrant, he requested the assistance of a third officer, Officer Kindrick, who was dispatched to the scene.  (#45 Att. 1 at 16)

Meanwhile, Officer Kerridge shined her flashlight around the interior of the vehicle and identified mace spray attached to the driver's car keys. (#45 Att. 1 at 12)  Officer Bryson returned to the car and helped Officer Kerridge remove Smith from the car. After a pat-down of Smith, which yielded nothing, the officers instructed Smith to sit on the curb on the passenger side of the Lexus. (#45 Att. 2 at 10) Officer Kerridge took the pocket knife from the floor of the front seat passenger area and placed it on the hood of the patrol vehicle.

Officer Bryson returned to the other side of the car and advised Hauck he had an outstanding warrant and arrested him. (#45 Att. 2 at 12)  Officer Bryson advised Hauck of his Miranda Rights and Hauck replied that he understood them.  (#45 Att. 2 at 13)  As Officer Bryson removed Hauck from the car, he observed a small folding knife on the door frame next to driver's side door. (#37 Ex.C at 3)  Hauck confirmed he owned the Lexus and consented to a search of the car.  (#45 Att. 2 at 13)  Officer Bryson asked Hauck if there was anything in the vehicle that he needed to know about and Hauck replied, "Not that's mine," and then said that he was "pretty sure [Wilson] has meth."   The officers placed the handcuffed Hauck in the back of the patrol vehicle. (#45 Att. 1 at 19)

Next, Officer Kerridge instructed Wilson to step out of the vehicle so she could perform a pat-down to check for weapons. (#45 Att. 2 at 14)  Wilson advised Officer Kerridge that he had a knife in his front right pants pocket. Officer Kerridge lifted Wilson's shirt and saw the clip from the knife hanging out of the pocket. Officer Kerridge removed the knife and dropped it on the ground from a height of approximately one foot. When the knife hit the ground, the blade swung open. Officer Kerridge determined the knife to be a weapon restricted for felons.  (#45 Att. 1 at 20-1)

Officer Kerridge asked Wilson if he had any other knives or sharp objects and he responded that he did not. She continued her pat down and found another small folding knife in Wilson's rear pants pocket. When asked why he didn't tell her about the second knife, Wilson responded that he did not remember he had it. Officer Kerridge instructed Wilson to sit on the curb along with Smith. (#45 Att. 1 at 23-5)

Officer Kindrick arrived on the scene and maintained watch over Smith and Wilson while Officers Bryson and Kerridge searched the Lexus. (#45 Att. 1 at 16)  While the search of the car progressed, Smith asked for and received permission to stand up from the curb. (#45 Att. 1 at 27)

## II.    The Search

During the search of the Lexus, the officers located a red drawstring Nike bag on the floor in the back seat, behind the driver's seat. The bag was drawn shut and was full and very heavy. Officer Bryson placed the bag on the hood of the patrol vehicle, 10 to 15 feet away from Smith and Wilson.  Officer Bryson asked to whom the bag belonged and Wilson said it was his. Officer Bryson asked Wilson for consent to search the bag and Wilson refused consent. Officer Bryson opened the drawstring bag, looked inside and immediately saw the grip of what appeared to be a handgun.  (#45 Att. 2 at 18-20)  At the time of the search, both officers were concerned

about officer safety and thought it was possible Smith or Wilson could have made a break, gotten

to the hood of the patrol car to get the bag. (#45, Att. 1 at 27-28 and Att. 2 at 17-20)

Officers Bryson and Kerridge arrested Wilson on charges of being a felon in possession

of a restricted weapon and felon in possession of a firearm and placed him in handcuffs. The

officers advised him of his Miranda Rights, which Wilson stated he understood. The officers

searched Wilson and found a third knife between the waistband of his underwear and his pants.

The third knife was also spring-assisted and the blade propelled into position with the push of a

button.

### III.    Statements

Officer Bryson advised Wilson of the basis for the arrest and stated Officer Bryson knew

there was a gun in the bag. Wilson replied that the bag belonged to Hauck and that he would do

anything to keep from going to jail. (#45 Att. 1 at 28-9) After the officers took Wilson into

custody, Officer Wilbon arrived at the scene to inspect and collect DNA from the gun. Officer

Wilbon specifically asked Wilson where he got the gun and to whom it belonged. Wilson

explained, "It's mine, the gun's mine, and the red bag is mine." Wilson further confessed that he

lied because he was a felon, he had a recent conviction for possessing a gun and an earlier

burglary conviction, and he did not want to return to jail. (#37 Ex. B at 3)

Following the arrests of Hauck and Wilson, Smith received permission from the officers

and Hauck to drive the Lexus away from the scene.

## DISCUSSION

### I.    Reasonableness of the Traffic Stop

An officer may conduct an investigatory traffic stop if the officer "reasonably suspects

that a traffic violation has occurred." *United States v. Miranda-Guerena*, 445 F.3d 1233, 1236

(9th Cir. 2006). Whether that suspicion is reasonable is an objective inquiry. See *Whren v. United States*, 517 U.S. 806, 813 (1996) (officer's subjective intent irrelevant). Even when the police mistakenly believe that a traffic violation has occurred, a traffic stop remains reasonable if the error is factual and the police correctly understand the law. See *United States v. Mariscal*, 285 F.3d 1127, 1131 (9th Cir. 2002). (A mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot."); *United States v. King*, 244 F.3d 736, 739 (9th Cir. 2001) ("an officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion").

Here, the officers stopped the Lexus for failure to signal a lane change, in violation of Oregon traffic laws. Oregon law requires a driver operating a vehicle "to give an appropriate signal continuously during not less than the last 100 feet traveled by the vehicle before changing lanes." Or. Rev. Stat. § 811.375. The Oregon Court of Appeals found that the statute "unambiguously refers to distance—'the last 100 feet traveled'—not duration of time." *State v. Kelly*, 206 P.3d 1098, 1100-01 (Or. App. 2009).

Whether this stop was reasonable, and therefore legal, turns on two questions: first, whether the Lexus failed to signal properly before changing lanes; and second, if not, whether any mistake on the part of the officers was factual or legal.

The Government argues that Officers Bryson and Kerridge had reasonable suspicion to stop the Lexus for violating Or.Rev.Stat. § 811.400 because the Lexus failed to signal for 100 feet before changing lanes. In his police report, Officer Bryson estimated that the Lexus "only signaled its lane change for less than 20 feet." (#37-3 at p. 3) At the hearing on the motion to suppress, he testified the Lexus signaled for about 20 feet before abruptly making two lane

changes in one continuous motion and turning into the parking lot at Maddy's. (#45 Att. 2 at 5)
Thus, the Government contends, the driver failed to signal for a long enough distance before
making two continuous lane changes and a 90 degree turn justifying the traffic stop.

Wilson asserts that the Lexus's turn signal operated for at least 100 feet and did not
violate Oregon statutes. Wilson contends that Officer Bryson was tentative, at best, in describing
how long the turn signal was on before the Lexus changed lanes. Officer Bryson did not
remember where he was when he saw the Lexus's turn signal come on. ( #45 Att. 2 at 31)  On
cross examination, Officer Bryson testified that when following the Lexus he travelled at the
speed limit (35 mph) for approximately 5 to 10 seconds before turning into Maddy's behind the
Lexus. (# 45 Att 2 at 29-32)  Based on that information Wilson argues that using a simple
mathematical equation, the Lexus's turn signal had to have been operating for at least 100 feet.
Accordingly, the vehicle did not violate Oregon statutes and the stop cannot be justified by
reasonable suspicion.

I find the Officers had reasonable suspicion to stop the vehicle.  While Officer Bryson
equivocated as to why he turned his vehicle from a westbound to eastbound direction, where he
was when he saw the Lexus, and how fast he was travelling, he was certain the lane change
seemed abrupt to him. (#45, Att. 2 at 31-2)  He was also certain that he saw the turn signal on for
about 20 feet before the Lexus changed lanes. While Wilson's mathematical argument is
intriguing, it lacks specificity as to exactly how fast the cars were traveling and the amount of
time Officer Bryson observed the turn signal prior to the Lexus's first lane change. Most cars
slow down before making a 90 degree turn into a driveway and here, the Lexus's lane changes
and turn into the parking lot were all one continuous movement.

Even if Officer Bryson was incorrect as to how long the turn signal operated before the Lexus changed lanes, his mistake is one of fact and not one of law. The mere mistake of fact does not render the stop illegal. *Mariscal*, 285 F.3d at 1131.

## II.    The Search of the Bag and Wilson's Statements Following Arrest

The Fourth Amendment provides that "[t]he right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The touchstone of the Fourth Amendment inquiry is reasonableness, as manifested in a person's "reasonable expectation of privacy." See *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J. concurring). The government violates the Fourth Amendment when it conducts an unreasonable search or seizure. See *Illinois v. Rodriquez*, 497 U.S. 177, 187 (1990). Here, the Government argues that the search of Wilson's Nike bag was reasonable because the officers had reasonable suspicion that there were weapons in the car.[1]

### A.    Reasonable Suspicion that Weapons were in the Car

Under *Terry v. Ohio*, a police officer with reasonable suspicion to believe that a suspect may be "armed and dangerous" may frisk that person "to determine whether the person is . . . carrying a weapon." 392 U.S. 1, 24 (1968). In *Michigan v. Long*, the Court enlarged *Terry's* applicability to include "search[es] of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden." 463 U.S. 1032, 1049 (1983). Vehicle searches based on reasonable suspicion are justified because "roadside encounters between police and suspects are especially hazardous, and danger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* Further, the police may

---

[1] The Government also contends the officers had probable cause to believe the vehicle contained contraband justifying a search pursuant to the automobile exception to the warrant requirement and as a search incident to an arrest. Because I find the officers had reasonable suspicion to believe weapons were in the car, I do not address these arguments.

search the inside of a car when they have reasonable suspicion to believe that any passenger, not just the suspect or arrestee, may be armed and dangerous. *See Arizona v. Gant*, 556 U.S. 332, 346-47 (2009). Finally, reasonable suspicion allows the search of items found within a car, in addition to the car itself. *See, e.g., Long*, 463 U.S. at 1048-49 (citing *New York v. Belton* for the proposition that a search of the interior of a car includes items and containers found within the car).

The Government contends that the search of the Nike bag was justified by the officers' reasonable suspicion that the occupants of the car were armed and posed a threat to the safety of the officers. (#45 at 9)  That suspicion was based on Houck's outstanding felony arrest warrant for distributing methamphetamine, the presence of a mace canister on Houck's keychain, the small folding knife near the driver's side door frame , Houck's statement that he was pretty sure Wilson had methamphetamine in the car, Wilson's history of weapons possession, Smith attempting to hide his knife on the floorboard of the car, Wilson's status as a felon on post-prison supervision following convictions for Burglary I, Theft II and Menacing,  Wilson's possession of two knives, one of which was illegal for him to possess and the second about which he lied, and the weight of the Nike bag indicating it could be concealing a weapon.

Wilson argues that the logic of *Terry* and *Long* is rooted in the principles of officer safety.  He contends that once Officer Bryson removed the Nike bag from the car and placed it on the patrol car, secured from the occupants of the Lexus, it no longer threatened the safety of the officers.   If officer safety is no longer implicated, then the search can no longer be justified and there is no broad exception to that principle simply because the container came out of an automobile.

I find that the facts known to the officers at the time of the search provided reasonable suspicion that the occupants of the car were armed, justifying a protective search of both the occupants and interior of the car. See *Terry*, 392 U.S. at 24; *Long* 463 U.S. at 1048-49.  Reasonable suspicion does not rise and fall with an officer's subjective feelings of fear; rather, it is based on an officer's reasonable belief, based on articulable facts, that a person may be armed and dangerous. Here, the officers possessed articulable facts, regarding the occupants of the Lexus that could lead them to suspect that the occupants were armed

-9-  OPINION AND ORDER

and posed a threat to the safety of the officers. These facts, listed above and known to the officers at the time of the search, provided the basis to form a reasonable suspicion that the occupants were armed, justifying a protective search of the car and the items found within.  Thus, the search of the Nike bag and the discovery of the weapon did not violate Wilson's Fourth Amendment rights and the evidence is admissible.

**Wilson's statements**

Because I find the search did not violate the Fourth Amendment, there is no poisonous tree to taint Wilson's statements that the Nike bag and gun belonged to him.  He made those statements after being advised of his Miranda rights and after acknowledging he understood his rights.

<u>CONCLUSION</u>

For the foregoing reasons, Wilson's motion to suppress [30] is DENIED.

IT IS SO ORDERED.

DATED this __18ˣ__ day of May, 2016.

_____
Hon. Robert E. Jones
United States District Judge